**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN HOPKINS,<br><br>            Plaintiff,<br><br>    v.<br><br>AMAZON.COM.DEDC, LLC,<br><br>            Defendant. | Civil Action No. 24-10005 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant AMAZON.COM.DEDC, LLC's

d/b/a Amazon[1] (Amazon) Motion to Dismiss Plaintiff John Hopkins' First Amended Complaint

(FAC) (ECF No. 23) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).  (ECF No. 28.)

Plaintiff opposed (ECF No. 34), and Defendant replied (ECF No. 35).  The Court has carefully

considered the parties' submissions and decides the matter without oral argument pursuant to Rule

78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown,

Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND[2]

### A.  Factual Background

Plaintiff is currently 59 years old.  (ECF No. 23 ¶ 11.)  On September 27, 2017, Defendant

---

[1]    Defendant asserts that "Amazon.com Services LLC ('Amazon') is erroneously named in the Amended Complaint as 'AMAZON.COM.DEDC, LLC.'"  (ECF No. 29 at 7 n.1.)

[2]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

hired Plaintiff as a "Ship Dock Associate, Level 1." (*Id.* ¶ 12.) Plaintiff remained in this position until being promoted to "Ship Doc[k] Process Assistant, Level 3 ('PA Level 3')" on March 4, 2021. (*Id.* ¶ 13.)

According to the FAC, "[p]rior to formally being promoted to a PA Level 3 on March 4, 2021 (and thereafter), Plaintiff experienced discrimination because of his age by Defendant's management and administrative offices." (*Id.* ¶ 14.) As an example, the FAC alleges that because of Plaintiff's "strong work ethic and dedication, Plaintiff was informed that he should apply for a promotion to a PA Level 3, a position for which he was qualified based on his knowledge and experience, in or about . . . early 2020 (before COVID-19 was declared a national emergency)." (*Id.* ¶ 15.) Plaintiff applied for and was offered the position in March 2020, but Plaintiff's promotion was never processed. (*Id.* ¶¶ 17-18.) Rather, "between early 2020 and March 4, 2021, several other younger employees were hired into and/or promoted into the role of PA Level 3, and Plaintiff remained employed in Defendant's system as a Ship Dock Associate, Level 1, being paid a lower hourly rate than that of a PA Level 3." (*Id.* ¶ 19.) On March 4, 2021, Plaintiff was promoted to PA Level 3 "[a]fter raising concerns about age discrimination to Defendant's management." (*Id.* ¶ 20.)

According to the FAC, "[a]fter Plaintiff's title changed to a PA level 3 . . ., Plaintiff experienced additional discrimination and harassment based on his advanced age and . . . discrimination by Defendant's management, culminating in a hostile work environment." (*Id.* ¶ 21.) The FAC lists several examples of alleged discrimination against Plaintiff compared to his younger co-workers: (1) Plaintiff being referred to "as the 'old man,'" specifically in situations where management was "determining who could physically handle particular tasks or who should be permitted to take breaks or voluntary time off"; (2) management making "clear [that] they

2

believed Plaintiff's age caused him not to have the physical prowess to complete the physical elements of his job (which was untrue and a stereotypical and false assumption)"; (3) management "[t]reat[ing] Plaintiff in a rude, aggressive, and demeaning manner"; (4) management making "false allegations against Plaintiff"; (5) management "[s]electively enforc[ing] policies against [Plaintiff] (that were not enforced against other younger employees)"; (7) management "fail[ing] to invite him to apply for the role of Process Assistant, Level 4 in or about February of 2022 and instead, hir[ing] a younger employee for this role" because Plaintiff "allegedly did not have proper training"; and (7) Plaintiff being "disciplined for taking time off (covered by the voluntary time off he was granted as part of his benefits with Defendant) while younger employees were freely permitted to utilize their voluntary time off without discipline." (*Id.* ¶¶ 22-24.)  Moreover, the FAC asserts that "as part of the constant discrimination and retaliation," management refused to provide proper training to Plaintiff so that he could perform his job duties as a PA Level 3 and refused to provide Plaintiff access to "critical systems" necessary to his job performance. (*Id.* ¶ 25.)  The FAC asserts that management provided Plaintiff's younger colleagues "with critical training and access to systems necessary to properly and successfully perform their jobs" and that management was "effectively blocking [Plaintiff's] ability to perform his job successfully and advance his career within [Defendant], which [Defendant] was not doing to younger employees." (*Id.* ¶¶ 26-27.)

According to the FAC, Plaintiff complained to various members of Defendant's management regarding age-based discrimination and to Defendant's Human Resources Department about not receiving training. (*Id.* ¶¶ 28-29.)  The FAC alleges that none of Plaintiff's complaints were investigated and that he continued to "be subjected to escalated hostility and animosity from Defendant's management." (*Id.* ¶ 30.)

Because of the alleged discrimination and Defendant's failure to conduct an investigation, Plaintiff dual filed a complaint of discrimination with the New Jersey Division of Civil Rights (NJDCR) and the United States Equal Employment Opportunity Commission (EEOC) on August 22, 2022.  (*Id.* ¶¶ 5, 31.)  Defendant was notified of the complaint in October 2022.  (*Id.* ¶ 32.)

In January 2023, "Defendant began a campaign to terminate Plaintiff's employment by issuing him a barrage of pretextual discipline, creating false narratives, and subjecting him to heightened hostility/retaliation."  (*Id.* ¶ 34.)  According to the FAC, "Plaintiff was issued pretextual discipline on or about January 9, 2023, and on or about March 9, 2023, which was clearly in retaliation for his complaints."  (*Id.* ¶ 35.)  Prior to January 9, 2023, Plaintiff had not been issued any written discipline during his employment with Defendant.  (*Id.* ¶ 36.)  Plaintiff claims that "[b]etween January of 2023 and September of 2023, Plaintiff continued to complain to Defendant's management that he was being discriminated against and retaliated against (due to his prior complaints of age discrimination), but his concerns were dismissed and the hostility only continued."  (*Id.* ¶ 37.)

On September 15, 2023, Defendant sent Plaintiff home pending an investigation into an accusation that Plaintiff had been in a prayer room for nearly four hours during his shift.  (*Id.* ¶ 38.) After an investigation regarding the prayer room incident, Plaintiff was called back to work several days later and issued a final written warning.  (*Id.* ¶ 39.)  Plaintiff subsequently filed a complaint with the Human Resources Department concerning "unlawful discrimination and retaliation that he was being subjected to."  (*Id.* ¶ 40.)

According to the FAC, a senior investigator in the Human Resources Department "later indicated that her office received Plaintiff's September 21, 2023 complaint on that day and that she allegedly conducted an investigation into Plaintiff's concerns and spoke to relevant

witness[es], reviewed relevant documentation and purportedly confirmed there was no violation of Defendant's policies or standards of conduct." (*Id.* ¶ 41.) On September 22, 2023, Plaintiff was terminated for the prayer incident. (*Id.* ¶ 42.) However, as alleged in the FAC, "Plaintiff believes and . . . avers that he was terminated" based on his age. (*Id.* ¶ 43.)

### B. Procedural History

Following an approximately two-year investigation, NJDCR issued its findings on June 5, 2024, which recounted the allegations of discrimination and Plaintiff's termination in 2023.[3] (ECF No. 29-3.) NJDCR determined that there was not "sufficient evidence to support a reasonable suspicion that [Defendant] discriminated against [Plaintiff] based on age." (*Id.* at 3.[4]) Less than ten days after NJDCR's decision, Plaintiff dual filed a new charge of discrimination with EEOC and NJDCR on June 14, 2024. (ECF No. 29-4 at 8.) "The circumstances of the alleged discrimination [were] based on [a]ge, [r]etaliation, and involve[d] issues of [r]etaliation, [d]ischarge that are alleged to have occurred on or about 09/22/2023," the date Plaintiff was terminated. (*Id.* at 2.) On October 23, 2024, while his complaint with EEOC and NJDCR was

---

[3]    Defendant has attached the dual complaint to NJDCR and EEOC, as well as NJDCR's investigation report, as exhibits to its Motion to Dismiss. (ECF Nos. 29-2 & 29-3.) The Court takes judicial notice of the exhibits. *See Brito v. LG Elecs. USA, Inc.*, Civ. No. 22-5777, 2023 WL 2675132, at *1 n.3 (D.N.J. Mar. 29, 2023) ("A court may [] consider any document integral to or relied upon in the Complaint and take judicial notice of matters of public record."); *Ruffin v. Allstate Ins. Co.*, Civ. No. 15-501, 2015 WL 5567433, at *1 (D.N.J. Sept. 22, 2015) ("A court may also consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))); *Chambers v. York Cnty. Prison*, Civ. No. 18-2386, 2019 WL 5310289, at *1 n.1 (M.D. Pa. Oct. 21, 2019) (noting that EEOC complaints are matters of public record that courts may take judicial notice of); *Roche v. Aetna, Inc.*, Civ. No. 22-00607, 2023 WL 3173394, at *4 (D.N.J. May 1, 2023) (noting that "it is proper for the [c]ourt to take judicial notice of decisions of an administrative agency." (quoting *Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 255 (3d Cir. 2000))).

[4]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

pending, Plaintiff filed his original Complaint in this case.  (ECF No. 1.)  On December 16, 2024, Plaintiff received his Notice of Right to Sue and was informed that the EEOC administratively closed his case.  (ECF No. 29-5.)

On January 29, 2025, following a conference with the parties, the Court permitted Plaintiff to file an amended complaint.  (ECF No. 20.)  Plaintiff filed the FAC on February 28, 2025.  (ECF No. 23.)  The FAC alleges that Plaintiff properly exhausted his administrative remedies "under the [Age Discrimination in Employment Act] ADEA by timely filing a Charge of Discrimination with the [EEOC] and by filing the instant claims within 90 days of receiving a Notice of Right to Sue from the EEOC and/or after 60 days following his filing with the EEOC."  (*Id.* ¶ 5.)  Moreover, the FAC asserts claims for ADEA violations (age discrimination, retaliation,[5] hostile work environment), 29 U.S.C. § 621 *et seq.*, and New Jersey Law Against Discrimination (NJLAD) violations (age discrimination and retaliation), N.J. Stat. Ann. § 10:5-1 *et seq.*[6]  (*Id.* at 7-9.)

## II.  <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the

---

[5]    Defendant asserts that "[n]one of [Plaintiff's] claims have merit, but at this stage [Defendant] does not seek dismissal of [Plaintiff's] ADEA retaliation claim.  [Defendant] reserves all rights and defenses."  (ECF No. 29 at 12 n.4.)  Therefore, Plaintiff's ADEA retaliation claim shall proceed.

[6]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.    **DISCUSSION**

Defendant argues that Plaintiff's ADEA claims for age discrimination and hostile work environment should be dismissed because (1) the ADEA claims are time-barred, and (2) the FAC fails to state a claim for an ADEA violation.  (*See* ECF No. 29.)  As to Plaintiff's NJLAD claims, Defendant argues that the statute's election of remedies provision bars Plaintiff's state law claims. (*Id.*)  The Court will address each argument in turn.

### A. ADEA Claims

#### 1. Continuing Violation Doctrine

Claims under the ADEA "require an aggrieved party to file a complaint with the EEOC within 300 days after the occurrence of the alleged unlawful employment practice." *Cascina v. Hackensack Univ. Med. Ctr.*, Civ. No. 19-17571, 2021 WL 4490249, at *3 (D.N.J. Oct. 1, 2021); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000). Importantly, "[i]f a claim is not part of a continuing violation . . ., it is time-barred if it did not occur within the 300-day statute of limitations lookback period." *Cascina*, 2021 WL 4490249, at *3.

"In determining whether to invoke the continuing violation doctrine, courts consider whether the acts of discrimination . . . are discrete (and therefore independently actionable) or non-discrete (and consequently actionable as part of a series of events)." *Griffin v. Dep't of Hum. Servs.*, Civ. No. 18-14697, 2019 WL 3369783, at *3 (D.N.J. July 26, 2019), *aff'd*, No. 19-2751, 2021 WL 3780078, at *2 (3d Cir. 2021) (citation modified). It is well established that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). This is so because "[a] discrete act in itself constitutes a separate actionable unlawful employment practice." *Id.* Examples of "[d]iscrete acts include . . . 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Id.*

To establish a continuing violation, "the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.*; *see Harel v. Rutgers, State Univ.*, 5 F. Supp. 2d 246, 261 (D.N.J. 1998) ("To establish a continuing violation, a plaintiff must show that: (1) at least one

allegedly discriminatory act occurred within the filing period and (2) the discrimination is 'more than the occurrence of isolated or sporadic acts of intentional discrimination' and is instead a continuing pattern of discrimination." (quoting *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997))); *Snyder v. Baxter Healthcare*, 393 F. App'x 905, 909 (3d Cir. 2010). "All the alleged acts, however, must be part of the same unlawful employment practice, meaning they involved 'similar conduct by the same individuals, suggesting a persistent, ongoing pattern.'" *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) (quoting *Mandel*, 706 F.3d at 165-67). Importantly, the continuing violation doctrine is "to be applied sparingly." *Morgan*, 536 U.S. at 113; *see also Heraeus Med. GmbH v. Esschem*, 927 F.3d 727, 740 (3d Cir. 2019) ("The 'continuing violation doctrine' applies only to a narrow class of continuing violations. . . .").

Defendant argues that because Plaintiff filed his first complaint with NJDCR and EEOC on August 22, 2022, Plaintiff may only challenge alleged discriminatory actions that occurred within the prior 300 days (*i.e.*, on or after October 26, 2021). (ECF No. 29 at 12.) Defendant asserts that the following claims are outside the limitations period: (1) Defendant not processing Plaintiff's March 2020 promotion until March 2021; and (2) "vague allegations that [Plaintiff] experienced 'discrimination'" prior to October 26, 2021. (*Id.* at 13; ECF No. 23 ¶¶ 13-21.) Moreover, Defendant argues that allegations in the FAC that do not provide a clear timeframe are also time-barred if such allegations occurred prior to October 26, 2021. (ECF No. 29 at 12-13.) In response, Plaintiff asserts that "the limited reference to the events and background that occurred pre-dating October 26, 2021[,] are clearly part of the continuing violation doctrine and are necessary to support [Plaintiff's] good-faith basis to make his complaints of age discrimination and the pervasive nature of the hostile work environment he alleges." (ECF No. 34 at 6.)

Regarding Plaintiff's ADEA claim based on age discrimination, the Court finds that the

continuing violation doctrine does not apply. *See Beckett v. Dep't of Corr.*, Civ. No. 10-0050, 2014 WL 3696243, at *15 (M.D. Pa. July 24, 2014), *aff'd sub nom.*, 597 F. App'x 665 (3d Cir. 2015); *Brooks v. Randstad Techs., LLC*, Civ. No. 19-04037, 2022 WL 874946, at *4 (E.D. Pa. Mar. 24, 2022) ("The continuing violation doctrine does not apply to . . . age discrimination claims pursuant to . . . the ADEA. . . . It may only be available to toll the statutory timely filing requirement for hostile work environment claims.") As a result, to the extent Plaintiff seeks to pursue an age discrimination claim for failure to promote in March 2021, such a claim is time barred. Plaintiff may, however, still rely on such facts as background evidence to support an otherwise timely claim. *See Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 585 n.8 (E.D. Pa. 2012) (noting that a plaintiff "may use prior discrete discriminatory acts 'as background evidence in support of [a] timely claim[]'" (quoting *Morgan*, 536 U.S. at 113)). There is no dispute that Plaintiff's discrimination claim based on his September 2023 termination is timely.

While not applicable to age discrimination, the continuing violation doctrine does apply to hostile work environment claims. *See Counterman v. Carson Long Mil. Acad.*, Civ. No. 18-2277, 2019 WL 13260563, at *5 (M.D. Pa. July 25, 2019) ("The continuing violation doctrine applies to discrimination that does not consist of discrete discriminatory acts – in other words, a hostile work environment."). Nevertheless, the Court need not resolve whether the doctrine applies in this case at the motion to dismiss stage because Plaintiff's allegations of repeated age-related discriminatory conduct may be revealed to have occurred within the limitations period once discovery has concluded. Therefore, accepting as true all factual allegations in the FAC and drawing all reasonable inferences in favor of Plaintiff, Defendant's motion is denied without prejudice as to the continuing violation doctrine. *See Curtis v. N.J. State Police*, Civ. No. 19-21164, 2020 WL 7828806, at *5 (D.N.J. Dec. 30, 2020) (declining to decide whether the continuing violation

doctrine applied at the motion to dismiss stage); *McCliment v. Easton Area Sch. Dist.*, Civ. No. 07-0472, 2007 WL 2319768, at *5 (E.D. Pa. Aug. 10, 2007) (same).  Defendant is not precluded from raising this issue in a subsequent summary judgment motion.

### 2.  ADEA – Age Discrimination

A prima facie case of age discrimination under the ADEA requires a plaintiff to allege the following: "(1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the adverse action occurred under circumstances that create an inference that plaintiff's age was a motivating factor." *Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 (3d Cir. 2019).  The United States Court of Appeals for the Third Circuit has noted that the fourth element has sometimes been phrased "as requiring the plaintiff to show that []he 'was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.'" *Id.* n.3 (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).  "This is just one way to establish the fourth element," and "[a] plaintiff may also establish the fourth element with proof that, during a reduction in force, younger employees were retained when plaintiff was fired" or "with other facts sufficient 'to create an inference that an employment decision was based on'" age.  *Id.* (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

The Third Circuit has also recognized that "[t]o defeat a motion to dismiss, it is sufficient to allege a prima facie case[,] . . . [b]ut it is not necessary."  *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).  For purposes of age discrimination, "[t]he complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'"  *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Here, Defendant asserts that Plaintiff does not satisfy the third and fourth elements.  (ECF No. 29 at 15.)  Regarding the third element, Defendant argues that "[b]ecause 'it is unclear on the fac[e] of the complaint[] what the requirements were for [his] position and whether [Plaintiff] was qualified,' this Court should dismiss his ADEA claim."  (*Id.* (quoting *Greengrass v. Provident Bank*, Civ. No. 16-4105, 2017 WL 3671303, at *1 (D.N.J. Aug. 25, 2017).)  Contrary to Defendant's contentions, the FAC alleges that Plaintiff had a strong work ethic, had not been disciplined (other than with regards to the prayer incident), was promoted during his employment with Defendant, and attempted to achieve additional promotions.  (ECF No. 23 ¶¶ 13-17, 36.) Based on the allegations in the FAC, the Court finds that Plaintiff has asserted enough facts at this early stage in the litigation for the Court to infer that Plaintiff was qualified for the job he was terminated from (*i.e.*, PA Level 3).  *See Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 268 (3d Cir. 2005) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir.1989)) (finding that the "satisfactory performance of duties, leading to a promotion, does establish a plaintiff's qualification for a job," and further finding that a defendant cannot succeed in arguing a plaintiff was unqualified after being promoted unless the plaintiff "had not disclosed information regarding [his] qualifications or if [he] had misrepresented [his] qualifications").

As to the fourth element, Defendant argues that "the [FAC] simply contains no facts alleging that [Plaintiff] was replaced, let alone replaced by a younger employee" or that "a similarly-situated, younger employee was treated more favorably with respect to their training, promotional opportunities, [Defendant's] September 2023 investigation, or his termination on account of his age."  (ECF No. 29 at 15.)  Contrary to Defendant's contentions, the FAC does repeatedly allege that younger employees were treated more favorably than Plaintiff.  (*See, e.g.*, ECF No. 23 ¶¶ 19, 22, 23, 26, 27.)  Moreover, the FAC alleges that Plaintiff was terminated one

day after filing a complaint with Defendant's Human Resources Department about age discrimination and retaliation. (*Id.* ¶¶ 42-43.) *See also Spells v. Physician & Tactical Healthcare Servs., LLC*, 615 F. Supp. 3d 230, 251 (D.N.J. 2022) (noting that "where a plaintiff is fired just two days after filing a[] . . . complaint, causation may be plainly established"). Based on the allegations in the FAC, the Court finds that Plaintiff has asserted enough facts at this early stage in the litigation to show that the adverse action occurred under circumstances that create an inference that Plaintiff's age was a motivating factor.

Therefore, Plaintiff's age discrimination claim shall proceed.

### 3. ADEA – Hostile Work Environment

The Third Circuit has recognized "that '[t]he analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII.'" *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 n.3 (3d Cir. 2012) (quoting *Brennan v. Metro. Opera Ass'n., Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). To prevail on a hostile work environment claim, a plaintiff must show the following: (1) "the employee suffered intentional discrimination"; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected the plaintiff"; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "the existence of *respondeat superior* liability." *Minarsky v. Susquehanna Cnty.*, 895 F.3d 303, 310 (3d Cir. 2018) (emphasis in original). This standard is demanding. *Sfanos v. Cranberry Crossroads Dining Venture, LLC*, Civ. No. 23-1502, 2024 WL 4827171, at *2 (W.D. Pa. Nov. 19, 2024) (citing *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)).

"To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "For discrimination to constitute severe or pervasive behavior, it must 'alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). As courts have emphasized, the "'conduct must be extreme' to satisfy this standard, so 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate." *Id.* (quoting *Faragher*, 524 U.S. at 788).

"[T[hough the bar for establishing severe or pervasive conduct is high, [c]ourts in this Circuit have . . . shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe [or] pervasive." *Painadath v. Lattanzio*, Civ. No. 22-3604, 2024 WL 1836500, at *5 (E.D. Pa. Apr. 26, 2024) (citation modified); *Fedder v. Bloomsburg Univ. of Pa.*, Civ. No. 23-1678, 2024 WL 580552, at *3 (M.D. Pa. Feb. 13, 2024) (collecting cases). Whether "allegations in a complaint are ultimately sufficient to prove that the . . . discrimination was severe or pervasive is a question best saved for summary judgment." *Painadath*, 2024 WL 1836500, at *5.

Here, because Defendant's challenge to Plaintiff's hostile work environment claim is centered around the severe and pervasive element, the Court joins other district courts in this Circuit who have determined that this issue is best reserved for summary judgment. (*See* ECF No. 29 at 18-19.) Notwithstanding, based on the Court's review of the FAC, and construing the allegations in the light most favorable to Plaintiff, Plaintiff has set forth sufficient facts to plead a plausible hostile work environment claim. Plaintiff has alleged "severe and pervasive" conduct "dating back to 2020" such as the "rescinding of his promotions, being passed over in favor of

younger employees, being treated in a rude, aggressive, and abrasive manner, being denied training or access to programs necessary to do his job, being passed over for promotional opportunities, being issued unwarranted and baseless discipline, and having his discrimination complaints ignored." (ECF No. 34 at 10; *see* ECF No. 23 ¶¶ 13-40.)  Moreover, the FAC provides specific allegations about how management "frequently" referred to Plaintiff as an "'old man, a comment directly referencing his age, particularly . . . when determining who could physically handle [certain] tasks or who should be permitted to take breaks or voluntary time off." (ECF No. 23 ¶ 22(i).) These allegations are sufficient to state a hostile work environment claim at this early stage in the litigation. *See Dunn v. Bucks Cnty. Cmty. Coll.*, Civ. No. 13-6726, 2014 WL 2158398, at *4 (E.D. Pa. May 22, 2014) (finding that the plaintiff sufficiently pled an age-based hostile work environment claim under the ADEA because the complaint alleged that (1) the defendant made discriminatory and derogatory remarks about the plaintiff's age and (2) the plaintiff was treated differently than her younger co-workers, such as being subjected to unwarranted discipline). Further, because determining what constitutes severe and pervasive conduct is a fact intensive inquiry, the Court believes "that discovery will reveal facts" that flesh out Plaintiff's claim. *Sfanos*, 2024 WL 4827171, at *2.

Therefore, Plaintiff's hostile work environment claim shall proceed.

**B.  NJLAD Claims**

For NJLAD claims, "a plaintiff must make an election of remedies between either the [NJ]DCR or civil action in court." *Kidd v. Preferred Care of Mercer*, Civ. No. 18-12081, 2020 WL 525863, at *4 (D.N.J. Jan. 31, 2020); *Hernandez v. Region Nine Hous. Corp.*, 684 A.2d 1385, 1388-89 (N.J. 1996) ("The [NJ]LAD provides a complainant with a choice of remedies in seeking redress for alleged discrimination.  Persons may pursue their claims either administratively, by

filing a verified complaint with the [NJ]DCR, or judicially, by directly instituting suit in the Superior Court." (citing N.J.S.A. 10:5-13)). "If a plaintiff chooses to file a complaint with the NJDCR, the plaintiff is foreclosed from filing a civil action while his complaint with the NJDCR is pending and after the NJDCR makes a final determination." *Weisberg v. Realogy Corp.*, Civ. No. 2-30, 2012 WL 983727, at *3 (D.N.J. Mar. 22, 2012).

The election of remedies provision "basically seeks to prevent parties from having 'a second bite of the apple' by pursuing the alternative route to relief. . . . It seeks to prevent duplication of efforts and forum shopping." *Wilson v. Wal–Mart Stores*, 729 A.2d 1006 (N.J. 1999). As a result, "with the exception of appellate review, an individual who has received a final determination by the [NJ]DCR will be barred by N.J.S.A. § 10:5–27 from bringing any other action, in any forum, based on the same injury." *Chugh v. W. Inventory Servs., Inc.*, 333 F. Supp. 2d 285, 290 (D.N.J. 2004). Indeed, "[f]ederal courts have 'consistently dismissed NJLAD claims filed subsequent to final determinations by NJDCR on election of remedies grounds.'" *Weisberg*, 2012 WL 983727, at *3 (quoting *Exantus v. Racquets Club of Short Hills*, Civ. No. 09-6428, 2010 WL 3259775, at *3 (D.N.J. Aug. 17, 2010)).

Plaintiff argues that the election of remedies provision does not apply because his 2022 NJDCR complaint alleged conduct different from his 2024 EEOC complaint. The Court disagrees and finds that the election of remedies provision bars Plaintiff's NJLAD claims.

Plaintiff filed his complaint with NJDCR in 2022. (ECF No. 23 ¶ 31.) The NJDCR complaint alleged the same age-related discrimination as in the FAC and remained open at the time of Plaintiff's termination in September 2023. (*See* ECF No. 29-2 at 7-10; ECF No. 29-3.) As part of the investigation, NJDCR considered Plaintiff's termination and claims of retaliation even though such conduct occurred after Plaintiff had filed the complaint. (*Id.* at 5.) On June 5, 2024,

NJDCR issued a letter to Plaintiff with its decision and stated that it "did not find sufficient evidence to support a reasonable suspicion that [Defendant] discriminated against [Plaintiff] based on age" or that Defendant terminated Plaintiff's employment in retaliation.  (*Id.* at 3-5.)  In that letter, NJDCR also informed Plaintiff that he could: (1) appeal the decision to the Appellate Division of the Superior Court of New Jersey within 45 days, (2) file a motion for reconsideration with NJDCR within 30 days of service of the order if certain criteria were met, or (3) ask the EEOC to review NJDCR's decision by submitting a written request to the EEOC within 15 days.  (*Id.* at 5.)  Less than ten days after NJDCR's decision, Plaintiff dual filed a new charge of discrimination with EEOC and NJDCR on June 14, 2024.  (ECF No. 29-4.)  "The circumstances of the alleged discrimination [were] based on [a]ge, [r]etaliation, and involve[d] issues of [r]etaliation, [d]ischarge that are alleged to have occurred on or about 09/22/2023," the date Plaintiff was terminated.  (*Id.*)

Here, accepting as true all factual allegations in the FAC and drawing all reasonable inferences in favor of Plaintiff, the Court finds that the allegations in the 2024 EEOC complaint are merely an extension of the conduct alleged in the 2022 NJDCR complaint.  While the acts differ slightly, the core grievance—age discrimination—is the same and grew out of the allegations stemming from the 2022 NJDCR complaint.  *See Waiters v. Parsons*, 729 F.2d 233, 238 (3d Cir. 1984) (finding that the plaintiff's informal EEOC complaint and formal complaint, filed over one year apart, contained the same core grievance even though the alleged discriminatory officials and acts were different, and therefore finding that the allegations in the informal complaint fell within the scope of the investigation regarding the formal complaint); *see also Gandy v. Pepsi-Cola & Nat. Brand Beverages, Ltd.*, Civ. No. 10-1932, 2012 WL 3821873, at *4 (D.N.J. Sept. 4, 2012) (noting that notwithstanding the plaintiff's characterization of the proposed amended complaint,

17

"the [p]roposed [a]mended [c]omplaint does plainly assert the same discrimination claims pursuant to NJLAD that were the subject of the [NJ]DCR investigation and final determination. Those claims are barred by the election of remedies provision.").

Plaintiff argues that NJDCR "did not have jurisdiction over [Plaintiff's] termination (and the only claims within its purview were those that occurred prior to August 2022 when he filed with that agency)." (ECF No. 34 at 11.) But NJDCR provided its final decision to Plaintiff and indicated that Plaintiff could appeal its decision, file a motion for reconsideration, or ask the EEOC to review its decision. (ECF No. 29-3 at 5.) Plaintiff did not pursue these remedies but rather filed a new EEOC complaint regarding his termination after NJDCR had already considered and rendered a decision on Plaintiff's termination as outlined in NJDCR's June 5, 2024 letter. Even if Plaintiff is correct that NJDCR exceeded its authority in considering Plaintiff's termination, Plaintiff failed to utilize the appropriate remedies available to him to rectify the allegedly improper ruling. *See Boykins v. N.J. Transit*, Civ. No. 23-2514, 2025 WL 786334, at *4 n.6 (D.N.J. Mar. 11, 2025) (noting that "[t]o the extent . . . [the] [p]laintiff assert[ed] that the [NJ]DCR decision 'contain[ed] factual inaccuracies and conclusions of law,' [the] [p]laintiff could have raised those issues in an appeal of the [NJ]DCR decision with the Appellate Division of the Superior Court of New Jersey"); *see also Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) ("After a charge is filed, the scope of a resulting private civil action in the district court is defined by the scope of the [] investigation which can reasonably be expected to grow out of the charge of discrimination.") (citation modified); *Pittman v. La Fontaine*, 756 F. Supp. 834, 843 (D.N.J. 1991) (noting that when a plaintiff takes "advantage of an alternate administrative mechanism which is quicker and less costly than suit in . . . court, [he is] prohibited additional resort to the judicial system except for appellate review of the adverse determination").

Moreover, accepting Plaintiff's argument that the claims in the 2024 EEOC complaint were outside the scope and unrelated to the claims in the 2022 NJDCR complaint, and therefore should not have been considered by NJDCR, would directly contradict the allegations in the FAC, which make clear that Defendant continuously discriminated against Plaintiff on the basis of, and ultimately terminated Plaintiff for, his age. (*See* ECF No. 23 (alleging that "Plaintiff believes and therefore avers that he was terminated in violation of the ADEA").) *See also Chugh*, 333 F. Supp. 2d at 290-91 ("[T]o permit the [p]laintiff's NJLAD claim to proceed would contravene the purpose of the election of remedies provision which seeks to make administrative redress exclusive once chosen.").

Further, the Court finds that the cases relied on by Plaintiff are unavailing as they relate to situations where courts have found the claims to be distinct. *See, e.g.*, *Cummings v. Princeton Univ.*, Civ. No. 15-8587, 2016 WL 6434561, at *4 (D.N.J. Oct. 31, 2016) (finding that the race discrimination claim in the plaintiff's complaint was not "fairly within the scope of the EEOC charge" for disability discrimination); *Barzanty*, 361 F. App'x at 414 (finding that although the plaintiff's former supervisor was allegedly involved in both incidents, the gender discrimination claim involved the discrete act of the defendant's termination of the plaintiff's employment, while the hostile work environment allegation involved continuing occurrences unrelated to the plaintiff's discharge). According to the allegations in the FAC, and accepting them as true, Plaintiff's termination was a continuation of Defendant's alleged age discrimination. In other words, Plaintiff's effort to bring NJLAD claims in federal court is merely a second bite at the apple to pursue related discrimination claims and effectively circumvent the agency process that Plaintiff willingly chose to pursue. *See Harter v. GAF Corp.*, 150 F.R.D. 502, 513 (D.N.J. 1993) (finding that the election of remedies provision barred the plaintiff "from asserting related state law claims

in an independent court judicial action, including as pendant claims in th[e] [plaintiff's] action"); *Boykins*, 2025 WL 786334, at *4 (finding that the election of remedies barred the plaintiff's NJLAD claim because the plaintiff previously submitted her claims of discrimination and retaliation to NJDCR, which rendered a final decision, finding a "lack of sufficient evidence to support a reasonable suspicion" to credit the plaintiff's claims); *Chugh*, 333 F. Supp. 2d at 290-91 (finding that the election of remedies provision barred the plaintiff's NJLAD claim because the plaintiff obtained a decision from NJDCR and failed to appeal the decision).

Therefore, Plaintiff's NJLAD claims are dismissed by NJLAD's election of remedies.

### C. Dismissal Without Prejudice

Defendant argues that it is entitled to dismissal "with prejudice" because Plaintiff already had an opportunity to amend his pleading.  (ECF No. 29 at 23.)  "The law of this Circuit is that an initial dismissal, like this one, is presumptively without prejudice, and [the Court] see[s] no reason to depart from that rule." *Jensen v. Genesis Lab'y*, Civ. No. 20-15121, 2025 WL 615480, at *16 (D.N.J. Feb. 26, 2025) (quoting *United States ex rel. Perri v. Novartis Pharm. Corp.*, Civ. No. 15-6547, 2019 WL 6880006, at *18 (D.N.J. Feb. 21, 2019)).  Therefore, the Court's dismissal of the FAC is without prejudice.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, and for other good cause shown, Defendant's Motion to Dismiss (ECF No. 28) is **GRANTED in part** and **DENIED in part**.  Plaintiff shall have thirty (30) days to file an amended complaint to the extent Plaintiff can cure the deficiencies cited herein. Failure to file an amended complaint within that time will render the dismissal final.  *See Mann v. A.O. Smith Corp.*, Civ. No. 21-2361, 2023 WL 2344225, at *2 (3d Cir. Mar. 3, 2023) ("A district court's dismissal without prejudice for failure to state a claim is converted into a dismissal with

prejudice if plaintiff 'declar[es] his intention to stand on his complaint' by failing to timely amend it. . . ."); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016) ("When that 30-day period expired, the District Court's decision became final.").

An appropriate Order follows.

Dated: August 13th, 2025

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**